UNITED STATES, Appellee,

v.

**Marcia L. BROTHERS, Airman First Class, U.S. Air Force, Appellant.**

No. 61,586.
ACM 26498.

U.S. Court of Military Appeals.

Argued Jan. 10, 1990.

Decided Aug. 16, 1990.

For Appellant: *Captain Michael D. Burt* (argued); *Colonel Richard F. O'Hair, Major Lynne H. Wetzell, Major Frank J. Spinner* (on brief).

For Appellee: *Captain Morris D. Davis* (argued); *Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial with members at Nellis Air Force Base, Nevada. Contrary to her pleas, she was convicted of two specifications of distributing methamphetamine and one specification of possessing methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. She was sentenced to a bad-conduct discharge and reduction to E–1. The convening authority approved the sentence, and the Court of Military Review affirmed in an unpublished opinion.

We granted review of the following issue:

> WHETHER APPELLANT WAS DENIED HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN CIVILIAN COUNSEL FAILED TO RAISE THE ISSUE OF UNLAWFUL ARREST OF APPELLANT AS A BASIS FOR SUPPRESSING PROSECUTION EXHIBIT 3.

Finding no denial of effective assistance of counsel, we affirm.

As is often true when adequacy of counsel is questioned, this case involves issues within the issue. Appellant's contention is that trial defense counsel erred when he

failed to challenge the lawfulness of appellant's apprehension at her on-base trailer and the subsequent search of the trailer. This search netted the drugs which were the basis of the possession specification. Even if successful, the claim would affect only the possession specification, leaving appellant guilty of the two more serious distribution specifications.

The facts of the case are not complicated. A servicemember who was working as an undercover informant for the Office of Special Investigations (OSI) allegedly ascertained that appellant was a drug user and willing to sell drugs. Two controlled purchases were effected at appellant's on-base trailer. Immediately after the second buy, OSI agents feigned apprehending the informant just outside the trailer; then the agents went to the trailer. With weapons drawn, they apprehended appellant and entered the trailer when she answered the door. They also apprehended a civilian male visitor (presumably appellant's source). In the trailer, the agents confiscated additional drugs and drug paraphernalia.

■ At the court-martial, civilian defense counsel made several motions. First, he asked the judge to sever the possession specification from the distribution specifications. Counsel explained that he intended to defend the distribution specifications primarily on the ground of entrapment.[1] See United States v. Dayton, 29 MJ 6 (CMA 1989); United States v. Clark, 28 MJ 401 (CMA 1989); United States v. Vanzandt, 14 MJ 332 (CMA 1982). He reasoned that, if the members knew of the drugs and paraphernalia in the trailer, they might infer that appellant was extensively involved in drugs and, thus, predisposed to distribute them (a not irrational concern). Further, counsel suggested that, if the entrapment defense failed and appellant was convicted of distribution, the Government was unlikely to proceed with a separate court-martial for only the possession specification. The military judge properly denied the motion to sever. See RCM 906(b)(10), Manual for Courts–Martial, United States, 1984.

Next, counsel moved in limine to dismiss the possession specification on the ground of entrapment. However, to establish the basis for this motion, counsel felt it necessary for the judge to hear substantially all of the evidence regarding the entrapment defense as to the distribution specifications. Therefore, rather than having the entire case put on twice—once before the judge on the motion and again before the members on the merits—defense counsel proposed that the case proceed to the merits and that the judge simply rule on the entrapment motion after all the evidence was in. As the judge and prosecution were agreeable, the case proceeded on that basis.[2]

The evidentiary basis of the agents' entry into the trailer was not well developed at trial. The prosecution simply offered the fruits of the search. Except for the motion to suppress based on entrapment, the defense made no objection. Specifically, there was no objection based on the lawfulness of the apprehension or the seizure of evidence. It is this failure to object broadly that is now cited as defense counsel's inadequacy.

However, as was mentioned on several occasions by defense counsel outside the

---

1. Presumably, entrapment was also available as a potential defense to the possession specification.

2. Appellate counsel now cite this suggestion as evidence of trial defense counsel's inadequacy since it amounted to "a complete 180 degree turn." The argument is that, since a moment before, defense counsel had claimed it would be prejudicial to appellant if the charges were not severed, it was being actually harmful to appellant for counsel to propose parading the evidence on the motion before the factfinder, rather than handling it in camera. The argument assumes, of course, that entrapment as a basis for suppression (as opposed to a defense) had some glimmer of hope on these facts—an assumption we do not share. Cf. United States v. Vanzandt, 14 MJ 332, 343 (CMA 1982). Further, the argument ignores the fact that counsel had lost the motion to sever and that the evidence would have been before the factfinder on the merits one way or the other.

presence of the members, the Article 32, UCMJ, 10 USC § 832, investigation revealed that the agents were in possession of a "contingent" search authorization. Apparently, this authorization (given by the acting base commander) was obtained just prior to the second controlled buy and was based on the fact of the first controlled purchase; the informant's report that appellant had said she would be receiving another quantity of drugs soon and would sell him more drugs; and the informant's report that appellant had said she then had drugs available for purchase.[3] Evidently, the authorization permitted the agents to search appellant's trailer and seize any contraband—if they could confirm that drugs were present. After the second controlled purchase was accomplished, the informant duly reported seeing additional drugs in appellant's trailer, and the agents made their move without further approval. As indicated, the prosecution did not attempt at trial to justify the search on the basis of the contingent authorization.

■ On appeal, appellant contends she was denied effective representation by counsel because the validity of this "warrant" was not challenged. Further, she complains that the lawfulness of the apprehension and search were not challenged on the basis of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (Fourth Amendment prohibits police from making warrantless, nonconsensual entry into suspect's home in order to make routine felony arrest).

In evaluating adequacy-of-representation claims, we have adopted the standards established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See United States v. Griffith*, 27 MJ 42 (CMA 1988); *United States v. Scott*, 24 MJ 186 (CMA 1987). Initially, the standards involve this two-part determination:

Not only must the defendant demonstrate that his attorney's "acts or omissions were outside the wide range of professionally competent assistance," [*Strickland v. Washington,*] 466 U.S. at 690, 104 S.Ct. at 2066, but he also "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

*United States v. Griffith, supra* 27 MJ at 43.

■ Further, counsel's conduct is to be evaluated from counsel's own perspective. Thus, the Supreme Court emphasized:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See *Michel v. Louisiana, supra*, [350 U.S. 91] at 101 [76 S.Ct. 158 at 164, 100 L.Ed. 83 (1955)]. There are countless ways to

---

**3.** This quantum of information would appear to be more than sufficient to support a magistrate's conclusion that there was probable cause to believe contraband would be found at appellant's trailer. *E.g., Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Thus, ironically, appellant seeks to exploit the acting base commander's overabundance of caution in failing to authorize a complete search outright.

provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).

466 U.S. at 689–90, 104 S.Ct. at 2065–66.

We disagree that defense counsel's failure to contest the search on the grounds now asserted rendered his performance ineffective.

In the first place, *Payton v. New York, supra,* involved quite different scenarios. That opinion was a consolidation of two separate appeals, Payton's and Riddick's. Payton was suspected of a murder at a gas station several days earlier, and the police had probable cause to believe he had committed the crime. Acting pursuant to a state statute, the police went to his apartment to arrest him. Using crowbars, they broke open the door; but Payton was not there. Inside the apartment, the officers found, "[i]n plain view, ... a .30–caliber shell casing" which was later introduced in evidence in Payton's trial for the murder. 445 U.S. at 576–77, 100 S.Ct. at 1374–75.

Riddick was wanted for two armed robberies that had occurred several years earlier. Acting without a warrant, the police went to his residence to arrest him. When Riddick's young son answered the door, the police entered the house, found Riddick in bed, and arrested him. In a search of a nearby chest of drawers, they found narcotics and related paraphernalia, which became the basis for Riddick's subsequent conviction for drug offenses. *Id.* at 578, 100 S.Ct. at 1376.

In these circumstances, the Court held: The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that

"[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Silverman v. United States,* 365 U.S. 505, 511 [81 S.Ct. 679, 683, 5 L.Ed.2d 734]. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Id.* at 589–90, 100 S.Ct. at 1381–82. Because arrest warrants were not obtained for Riddick and Payton, the judgments were reversed. *Id.* at 603, 100 S.Ct. at 1388.

However, the facts of the instant case were quite different. Here the informant was invited into appellant's home and the offense occurred therein. In *Lewis v. United States,* 385 U.S. 206, 211–12, 87 S.Ct. 424, 427–28, 17 L.Ed.2d 312 (1966), the Supreme Court made it clear that when an accused invites an undercover agent into his home for the purpose of selling drugs, the agent is on the premises with the accused's valid consent. The agent's presence "presents no question of the invasion of the privacy of a dwelling." *Id.* at 212, 87 S.Ct. at 428 (quoting Government's brief). In addition, there is authority that, after a consensual entry of the premises has been made by an undercover agent (be he a law-enforcement officer or merely an informant) for the purpose of buying drugs, the agent may reenter with law-enforcement assistance. This has been termed " 'consent once removed.' " *United States v. Diaz,* 814 F.2d 454, 459 (7th Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987). *See also United States v. Paul,* 808 F.2d 645, 648 (7th Cir.1986). We need not decide the correctness of these latter decisions here. Suffice it to say, defense counsel's representation was not inadequate because he elected not to obscure the primary thrust of the defense (which went to all the charges) with a

tenuous theory which went only to the least significant of the charges.

Similarly, counsel was not inadequate in electing not to make an issue of the "contingent warrant," which also went only to the least significant of the charges. For one thing, if the agents were lawfully present in the trailer at the time the apprehension was made, the validity of the "warrant" would seem to be irrelevant. *Washington v. Chrisman*, 455 U.S. 1, 9, 102 S.Ct. 812, 818, 70 L.Ed.2d 778 (1982). Second, since the agents entered the trailer with guns drawn, it is clear that appellant was immediately placed under apprehension; thus, it may be that, factually, the agents were not even relying on any search authorization. Third, even if the "warrant" was being relied on and was invalid, trial defense counsel faced an uphill struggle in any motion to suppress, if the agents were relying on it in good faith. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See also United States v. Owens*, 848 F.2d 462 (4th Cir.1988) (Wilkins, J.).

Finally, though not universally accepted, there is support for the validity of prospective, anticipatory, or contingent warrants. *See United States v. Outland*, 476 F.2d 581 (6th Cir.1973); *United States ex rel. Beal v. Skaff*, 418 F.2d 430 (7th Cir.1969); *Commonwealth v. Soares*, 384 Mass. 149, 424 N.E.2d 221 (Mass.1981); *Johnson v. State*, 617 P.2d 1117 (Alaska 1980); *People v. Glen*, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972); *Mehrens v. State*, 138 Ariz. 458, 675 P.2d 718 (App.1983); *Alvidres v. Superior Court of Ventura County*, 12 Cal.App. 3d 575, 90 Cal.Rptr. 682 (2d Dist.1970). Under these circumstances, we can hardly fault defense counsel for declining to bury what he considered to be his best theory under this morass.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.