UNITED STATES,

v.

Timothy J. KELLY, 378 90 9997, Private First Class (E–2), U.S. Marine Corps.

NMCM 88 4492.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 16 July 1988.

Decided 7 Jan. 1991.

Lt Nicholas Fitzgerald, JAGC, USNR, Appellate Defense Counsel.

LtCol Joseph S. Uberman, USMC, Appellate Government Counsel.

Before ALBERTSON, Senior Judge, and LANDEN and STRICKLAND, JJ.

ALBERTSON, Senior Judge:

At a general court-martial composed of military judge alone appellant plead guilty pursuant to a pretrial agreement to two specifications each alleging a one day unauthorized absence, one specification alleging solicitation of distribution of crystal methamphetamine, and one specification each of possession, use, and distribution of the crystal methamphetamine solicited, in violation of Articles 86, 134, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 934, and 912a, respectively. He was sentenced to 18 months confinement, total forfeiture of pay and allowances, reduction to pay grade E–1 and a dishonorable discharge. The convening authority, in accordance with the terms of a pretrial agreement, approved the sentence but suspended all confinement in excess of 15 months.

Appellant assigns as error the ineffective assistance of his trial defense counsel. Appellant identifies as the specific incompetence or serious deficiency that denied him effective representation his counsel's advice to plead guilty to Specifications 2 and 3 of Charge II, wrongful use and distribution of methamphetamine. Such advice was incompetent, alleges appellant, because counsel knew at the time of that advice that the Government could not corroborate his confession, the only evidence it had to support the offenses alleged in those two specifications. As a result of that incompetence, appellant asserts that he was significantly prejudiced by the sentence adjudged by the military judge because the military judge "unequivocally" told appellant's defense counsel after his court-martial had concluded that "had he entered pleas of not guilty to Specifications 2 and 3 of Charge II, he would have been acquitted of those charges and would have received a considerably lighter sentence." [1] Appellant's Brief at 5. Appellant asks this Court to set aside the findings of guilty and to dismiss Specifications 2 and 3 of Charge II and reassess the sentence. In support of his claim he cites *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Bono*, 26 M.J. 240 (C.M.A.1988); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987); and *United States v. Haston*, 21 M.J. 559 (A.C.M.R.1985). Appellate Government's response is that trial defense counsel's performance was a matter of tactical judgment and met the *Strickland* standard. We agree with appellant and find that he has borne the burden required of him by *Strickland v. Washington* and *United States v. Scott*, and, in doing so, has demonstrated that his trial defense counsel provided him ineffective assistance and that that ineffectiveness prejudiced the results

---

1. We accept the hearsay as true since it was not objected to nor rebutted by appellate Government counsel.

of his case. Our rationale is discussed below.

### FACTUAL BACKGROUND

■ In support of their pleadings the defense and Government submitted affidavits by the trial defense counsel and trial counsel. The affidavits are in addition to the self-evaluation statements made by the trial defense counsel concerning his representation of appellant in a post-trial petition for clemency[2] dated 15 September 1988 that he submitted to the convening authority pursuant to Rules for Courts–Martial (R.C.M.) 1105 and 1106, Manual for Courts–Martial (MCM), United States, 1984. In that petition trial defense counsel stated he had rendered ineffective assistance of counsel when he "advised appellant to waive his Article 32 hearing and accept a pretrial agreement limiting confinement to fifteen months. This decision erred on the side of caution in that the distribution charge arose from an uncorroborated confession."

Pursuant to our fact-finding authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have reviewed the petition for clemency, the affidavits submitted by trial defense counsel, the affidavit submitted by the trial counsel, the affidavit of trial defense counsel submitted in response to an inquiry made by this Court, and the record of trial, and we have found the following facts:

1. On 31 May 1988 appellant confessed to NIS that around 9 April 1988 he asked Raithel "if he could sell [me] some crystal [methamphetamine] to take home to Michigan with me."

2. Appellant gave Raithel $240.00 "to buy as much crystal as he could."

3. Raithel gave him 2 zip-lock bags of crystal.

4. Appellant went on leave (18 April 1988) to his home in Livonia, Michigan, and took the crystal with him.

5. An unidentified friend of appellant weighed the crystal and determined that it weighed more than 5.5 grams.

6. Appellant used the crystal with his unidentified friends.

7. When appellant left Michigan to return from leave, he left ½ gram with an unidentified friend; he did not bring any back to Camp Pendleton with him.

8. Appellant took a urinalysis upon his return from leave and the results were negative.

9. Appellant confessed to sharing the methamphetamine with two unidentified civilian friends when NIS stated that it might look better if he had not used all the drugs himself.

10. Charges were preferred against appellant on 10 and 16 June 1988 alleging, among other things, violations of Article 112a, and 134, UCMJ: one specification each of wrongful possession with intent to distribute methamphetamine, wrongful use of methamphetamine, wrongful distribution of methamphetamine, and solicitation to wrongfully distribute methamphetamine.

11. Appellant was detailed defense counsel on 13 June 1988.

12. An Article 32 investigation was ordered on 16 June 1988.

13. Defense counsel, shortly after receiving appellant's case, contacted the Battalion executive officer to request appellant's case be withdrawn from an Article 32 investigation and referred to a special court-martial in exchange for pleas of guilty.

---

**2.** The verbatim transcript of the appellant's court-martial proceedings raises the issue of effective assistance of counsel and its effect on the providency of appellant's plea only to his wrongful use of methamphetamine. We consider the effective assistance of counsel issue as it pertains to the providency of appellant's plea of guilty to his wrongful distribution of methamphetamine raised after termination of the trial only because trial defense counsel raised it in the R.C.M. 1105 matters. We in no way stray from the long held principle that "the question of improvidence may not be properly considered unless some matter inconsistent with a plea of guilty appears *prior to the termination of the trial.*" *United States v. Lemieux,* 10 U.S.C. M.A. 10, 12, 27 C.M.R. 84, 86 (1958); Article 45, UCMJ, 10 U.S.C. § 845.

14. The battalion executive officer took the defense offer to the commanding officer recommending approval.

15. The commanding officer expressed concern that appellant receive a bad conduct discharge but that confinement was inconsequential.

16. Defense counsel advised the commanding officer to contact trial counsel for assurances that a punitive discharge would result.

17. Trial counsel advised the commanding officer that the Commanding General's policy on drug distribution was that such an offense be tried by general court-martial.

18. The commanding officer thereupon refused to discuss any possibility of appellant's trial by special court-martial with defense counsel.

19. Because of "Private First Class Kelly's damaging confession, [defense counsel] made the regrettable decision to advise Private First Class Kelly to waive his Article 32 hearing and accept a pretrial agreement limiting confinement to fifteen months."

20. Defense counsel advised appellant to plead guilty because of the excessive sentences that courts had been adjudging in similar drug cases at Camp Pendleton.

21. Defense counsel advised appellant that the law required that his confession be corroborated before the confession could be used as evidence against him.

22. Defense counsel advised appellant that his confession to the solicitation and possession offenses could be corroborated and that those offenses exposed him to between ten and twenty years confinement depending on the factual finding of "with intent to distribute."

23. Defense counsel knew that the Government lacked evidence corroborating appellant's confession that he had wrongfully used methamphetamine with his friends.

24. Defense counsel advised appellant that the probable range of confinement for all offenses was between 12 and 36 months.

25. Defense counsel's motive in advising appellant as he did was the "jeopardy I perceived he was in if found guilty of the solicitation and possession offenses without the benefit of a pre-trial agreement."

26. Before an Article 32 investigation was held, the defense counsel entered negotiation with the Government.

27. The Government required appellant to plead guilty to all charges and specifications.

28. The defense finally negotiated a pretrial agreement with the staff judge advocate whereby the appellant agreed to plead guilty to all charges and to waive the Article 32 investigation in return for the convening authority's agreement that he could approve any lawful sentence adjudged but would suspend any confinement in excess of 15 months.

29. On 27 June appellant voluntarily waived the Article 32 investigation and in doing so acknowledged his understanding of his rights and that he had discussed those rights with defense counsel and was satisfied with his advice.

30. The battalion commanding officer recommended appellant for trial by general court-martial on 18 July 1988; the staff judge advocate concurred in that recommendation on the same date.

31. On 18 July 1988 appellant and his defense counsel formally submitted the pretrial agreement in writing to the convening authority.

32. Charges were referred to trial by general court-martial on 19 July 1988.

33. On 20 July 1988 the convening authority approved the pretrial agreement offered by the defense.

34. The pretrial agreement required the appellant to plead guilty to all charges alleged with the exception that he could plead guilty to simple possession rather than aggravated possession (with intent to distribute).

35. Trial was held on 25 and 26 July 1988.

36. Because the pretrial agreement was negotiated so early in the case, trial coun-

sel did not attempt to gather additional evidence, such as corroboration.

37. Appellant providently plead guilty to all charges and specifications as agreed in the pretrial agreement.

38. Appellant's case was one of the defense counsel's first general courts-martial and the first client he represented who was charged with distribution.

39. The military judge told the defense counsel, after adjournment of the appellant's trial, that he questioned the defense's decision to plead guilty to the wrongful distribution because if it had not been for that offense, "the sentence would have been considerably less."

40. The military judge believed it obvious that the Government could not prove the use and distribution offenses.[3]

41. No matter inconsistent with appellant's plea was raised during the trial; no matter was raised during or after trial that questions the truth of appellant's statements made during providency; nor was any matter raised during or after trial that suggests that appellant entered his plea improvidently or did not understand the full meaning and effect of his pleas.

42. Defense counsel believes his advice to appellant to plead guilty was ineffective.

43. Appellant has never indicated that he was not guilty of the offenses, that he was coerced into making the confession, or that he involuntarily plead guilty.

44. The maximum permissible punishment faced by appellant for all the drug-related offenses alleged without multiplicity considerations was 40 years and 35 years assuming multiplicity was found.

45. The maximum permissible punishment faced by appellant for those drug-related offenses defense counsel believed the Government could prove was 20 years without multiplicity considerations and 15 years with a finding of multiplicity.

46. The maximum permissible punishment faced by appellant based upon his pleas of guilty to the drug-related offenses, with consideration for multiplicity, was 25 years and without such consideration 30 years.

47. The least maximum permissible punishment faced by appellant had he plead guilty to simple possession (assuming the Government would be unable to prove with intent to distribute) and solicitation was 10 years.

48. The military judge found the solicitation and simple possession offenses multiplicious, thus permitting a maximum punishment of only 5 years.

49. The average range of punishment for an accused who pleads guilty at a general court-martial to simple possession and solicitation to distribute methamphetamines in the Naval Service is a bad-conduct discharge, 8–10 months confinement, total forfeiture of pay and allowances and reduction to pay grade E–1.

## THE LAW

■ Although "[t]he competence of counsel is presumed," *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987), and that presumption is a strong one, it is rebuttable. *United States v. Brothers*, 30 M.J. 289 (C.M.A.1990).[4] An appellant who claims ineffective assistance of counsel bears the burden of demonstrating that his counsel was seriously deficient in some manner and that a reasonable probability exists that the results of his court-martial would have been different had his counsel's deficiency not been present. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Brothers*, 30 M.J. 289 (C.M.A.1990); *United States v. Bono*, 26 M.J. 240 (C.M.A. 1988). Additionally, the test for determining whether counsel's performance is deficient is based upon the reasonableness of counsel's perspective at the time of his

3. Note 1, *supra.*

4. In fact "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted.) *United States v. Brothers*, 30 M.J. 289, 291 (C.M.A.1990).

alleged deficiency in light of all the circumstances. *Brothers,* 30 M.J. at 291; *Scott,* 24 M.J. at 188. In *Scott* the Court of Military Appeals quoted *United States v. Cronic,* 466, U.S. 648, 690, 104 S.Ct. 2039, 2066, 80 L.Ed.2d 657 (1984): "In making [the competence] determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."

■ In the instant case, the trial defense counsel's affidavits and the petition for clemency he submitted to the convening authority admitting to having provided appellant with ineffective assistance of counsel certainly assist the appellant in bearing his heavy burden of rebutting the presumption of competence, at least as it pertains to the first prong of *Strickland.* Such an admission, however, does not require a *per se* finding of ineffectiveness such that the deficiency identified by the trial defense counsel is conclusively determined serious or that the second prong of *Strickland v. Washington* need not be applied. That trial defense counsel believes he was ineffective, however, is a factor for this Court to consider in assessing the validity of the appellant's assertion; but, it is only *a* factor. We still must look at counsel's performance from the standpoint of reviewing the case as a whole under the auspices of the *Strickland* test.

■ As recognized in *Brady v. United States,* 397 U.S. 742, 756–757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747, 761 (1970), a defendant's appraisal of the Government's case against him and the likelihood of leniency should he plead guilty and have his plea accepted heavily influences his decision to plead guilty. He is not after that entitled to withdraw his plea merely because he subsequently discovers that his appraisal of the case against him was flawed or he miscalculated the penalties attached to his pleas. Also, where an appellant pleads guilty pursuant to the terms of a pretrial agreement on the advice of counsel, he can attack the voluntary and intelligent character of that plea only by showing that the advice he received from counsel was not within the standards set forth in *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). *See Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The standard the appellant must meet under *McMann* is to show that his counsel's advice was not within the wide range of competence demanded of attorneys in criminal cases. "A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, ... might be factually supported." *Tollett v. Henderson,* 411 U.S. at 268, 93 S.Ct. at 1609, 36 L.Ed.2d at 244. Finally, "[c]ounsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law." *Id.*

■ A defense counsel must discuss with his client, *inter alia,* his right to plead guilty or not guilty and the meaning and effect of a plea of guilty. He cannot do that without first obtaining as complete a knowledge of the facts of the case as he can. Once he obtains that knowledge then he must give the accused a candid opinion of the merits of his case. The defense counsel should consider the elements of proof of the offenses alleged and the pertinent rules of evidence to ensure that evidence that the Government tries to offer is admissible as part of his explanation to his client. *Discussion,* R.C.M. 502(d)(6). Once the defense counsel so advises his client, the client has the sole responsibility for making the decision whether to plead guilty or not guilty, whether to waive trial on the facts by the court and give up his constitutional rights, and whether to enter a pretrial agreement. *See Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594, 612 n. 1 (1977) (Burger, C.J., concurring); JAGINST. 5803.1 (Rules of Professional Conduct)

Rule 1.2(c); ABA Standards for Criminal Justice, *The Defense Function*, Standard 4-5-2 (1986).

In *United States v. Ready*, 29 C.M.R. 713 (N.B.R.1959), the Board found inadequate representation of counsel where an accused plead guilty to two specifications alleging use of narcotics. The Board based its findings on the convening authority's post-trial statement admitting the Government could not corroborate the accused's confession and the non-lawyer defense counsel's post-trial statement admitting that he had allowed the accused to plead guilty knowing, among other things that the Government could not corroborate the confession because he felt no obligation to influence the accused's plea. The Board found that Ready's defense counsel had not challenged the adversarial process in the interests of his client—he had abdicated his obligations to his client.

## APPLICATION OF THE LAW

### A. The Pleas

█ Appellant's situation is in contrast to *Ready*. Appellant plead guilty after his defense counsel advised him of the practicalities of the Government's case in light of its evidentiary problem of corroborating his vague confession. Additionally, his defense counsel, on the face of the record, obtained for appellant a pretrial agreement that was within the lower range of confinement that counsel believed to be the probability of confinement to be adjudged, confinement that was substantially less than the maximum imposable 20 years and 2 months confinement, if appellant were convicted as charged. Appellant wanted to plead guilty, wanted to go home to his pregnant girlfriend, and told the military judge he would plead guilty even if the maximum sentence was 30 years. Defense counsel did not abrogate his obligation to his client because he advised appellant of the facts, the law, and the maximum permissible punishment, the probable sentence, and the maximum sentence that could be approved by the convening authority if he met the conditions they offered the Government. ABA Standards for Criminal Justice, *Defense Function* 4-6.2 (1986). As stated in *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970):

> ... we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial. We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves. But our view is to the contrary and is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants' admissions that they committed the crime with which they are charged.

*Id.*, 397 U.S. at 758, 90 S.Ct. at 1474, 25 L.Ed.2d at 762. Appellant, again unlike Ready, has never suggested that he was not guilty of the offenses to which he plead guilty, that his confession was coerced, or that he was forced to plead guilty. He provided a sufficient factual basis [5] during

---

5. We note here that a "sufficient factual basis" necessary for a military judge to accept an accused's plea of guilty as provident does not require that the *evidence* establish an accused's guilt. *United States v. Figueroa*, 39 C.M.R. 494 (A.B.R.1968). Only if the evidence conflicts with the guilty plea such as to negate guilt is the plea improvident. *United States v. Bomberg*, 17 U.S.C.M.A. 401, 38 C.M.R. 199 (1968); *United States v. Thompson*, 13 U.S.C.M.A. 395, 32 C.M.R. 395 (1962); Article 45, UCMJ. Evidentiary issues, *e.g.*, corroboration of confessions, involve tactical or strategic decisions separate and apart from whether an accused is in fact guilty of the offenses with which he is charged and to which he enters provident pleas. Those tactical or strategic decisions made by the accused are based upon the advice of counsel in conjunction with his own ultimate decision about what plea to enter. On the other hand, a trial counsel is obligated not to misrepresent to the convening authority, the authority exercising prosecutorial discretion within the military justice system, or to the defense, the nature of the existing evidence to be used against the accused. *See* ABA Standards for Criminal Justice, *The Prosecution Function*, 3–4.2 (1986); *cf.*

providency from which the military judge could reasonably conclude that he committed the offenses alleged and would be convicted if he were to plead not guilty. *See United States v. Brown*, 11 U.S.C.M.A. 207, 29 C.M.R. 23 (1960).

He pled guilty after weighing the legal consequences with the practical considerations of the situation facing him.[6] Appellant plead guilty and was represented by defense counsel at the time of his pleas of guilty. We have no reason to doubt that his solemn admissions of guilt to those offenses during his providence inquiry were accurate and reliable. The verbatim transcript, therefore, reveals that appellant's trial defense counsel's advice was within the range of competence demanded of criminal attorneys. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Thus, if all we were required to review were the circumstances revealed by the verbatim transcript, we would find that appellant's pleas of guilty to Specifications 2 and 3 of Charge II were voluntarily and intelligently made. His as-

signment of error would therefore lack merit.

### B. Pretrial Negotiations

■ In view of the post-trial submissions attached to appellant's record in support of the assigned error, however, we are required to consider the question whether trial defense counsel provided appellant with effective assistance of counsel when he advised his client to plead guilty to all charges and specifications in return for the pretrial agreement. This look behind the face of the pleas to counsel's advice is required because counsel admits that he knew at the time of his advice that the Government could not prove the use and distribution offenses. Such knowledge necessitates an evaluation of the reasons behind counsel's advice. If counsel failed to recognize the ramifications such knowledge had on his client's case, including its use as a tool for negotiating a pretrial agreement, or if counsel failed to explain fully such ramifications to his client, then a serious question arises as to whether his advice to

*United States v. Croft*, 33 C.M.R. 856, 860 (A.B.R. 1963) (trial counsel, aware of an exculpatory inconsistency in the accused's confession, should ascertain the truth from the defense counsel and point out that the exculpatory matter is inconsistent with a plea of guilty and if the client persists in pleading guilty the exculpatory matter must be resolved at the trial). Counsel and client should heed the warning:

> It is vitally important that defense counsel satisfactorily obtain full discovery and disclosure before committing his client to a particular plea. A plea agreement that might seem to be a beneficial deal may well, in light of *all* the available evidence, be a score for the government. Some prosecutors are capable of withholding crucial evidence until the last moment, hoping to obtain agreement to a plea which defense counsel otherwise would not consider. Conduct a thorough, independent investigation to learn as much about the facts as can be ascertained to avoid unwittingly becoming the prosecutor's dupe.

J. Lawless, *PROSECUTORIAL MISCONDUCT* § 6.02 at 311 (1985). By advising counsel to heed this warning, we in no way mean to imply that trial counsel here in any way did not disclose evidence to the defense. In fact, the record reflects full disclosure of what little evidence the trial counsel possessed at the time the defense counsel advised his client and the client made his decision to plead guilty.

6. This case is similar to that described in *McMann v. Richardson* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) in which the Supreme Court hypothesized about a defendant who had to decide whether to plead guilty or not guilty in light of his judgment whether the Government could get his prior confession admitted. The Court held based on its own precedent in *Brady v. United States:*

> All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment about the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by the court.

*Id.,* 397 U.S. at 769, 90 S.Ct. at 1448, 25 L.Ed.2d at 772. The Court went on to say:

> a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either about the facts or what a court's judgment might be on given facts. That a guilty plea must be intelligently made is *not* a requirement that all advice offered by the defendant's lawyer withstand a retrospective examination in a post-conviction hearing.

*Id.,* 397 U.S. at 770, 90 S.Ct. at 1448, 25 L.Ed.2d at 773. (Emphasis added.)

waive the Article 32 investigation and to plead guilty to all specifications and charges was within the range of that normally expected of competent counsel.

As previously noted, trial defense counsel himself first raised the issue of the effectiveness of his advice when he stated he advised appellant to "waive his Article 32 hearing, and accept a pretrial agreement limiting confinement to fifteen months." He stated that this advice to his client was a decision that "erred on the side of caution in that the distribution charge arose from an uncorroborated confession." In one of his post-trial affidavits trial defense counsel revealed that he had proposed to the battalion that appellant be referred to a special court-martial for the offenses and that he assured the battalion that appellant would plead guilty and get a punitive discharge for the offenses. He then stated that in response to the defense offer the trial counsel had advised the battalion "that the Commanding General's policy on drug distribution was that they all go to General Court–Martial's [sic]." He subsequently advised appellant to waive the Article 32 investigation and to plead guilty to all charges and specifications knowing that at the time of that advice and at the time of the appellant's waiver of the Article 32 investigation that the Government could not corroborate the drug use and distribution offenses. Trial defense counsel also knew, or should have known, at that point in time that it was the distribution offense that was apparently the sole basis for the referral of appellant's case to trial by general court-martial. Whether trial defense counsel advised appellant that it was the drug distribution offense that made it a general court-martial offense is not clear from the record. The worrisome part of trial defense counsel's conduct is his immediate rush to talk with authorities about forums and punishment limitations with-

out, what appears, any factual basis upon which to do so. Based upon the circumstances of a case such as this, we might ordinarily speculate about the various logical scenarios that would explain or justify, from a tactical or strategic standpoint, defense counsel's early contacts with the authorities and his willingness to advise his client to waive the Article 32 investigation and plead guilty to all charges and specifications. In this case, however, we need not, and, in fact, cannot speculate about his rationale. Defense counsel, having been placed on notice that the effectiveness of his representation was being challenged, was given full opportunity to explain his reasoning and has provided this Court with the rationale for the advice and the decisions he made.

In the affidavits explaining his actions, trial defense counsel gives no indication of having investigated his client's case to the extent of interviewing the one witness named by appellant in his confession or determining the Government's ability to identify the unnamed Livonia, Michigan, distributees of the methamphetamine to test not only their recollection of the distribution and appellant's use but also their availability to testify against appellant. *See United States v. Brothers*, 30 M.J. 289 (C.M.A.1990); *United States v. Scott*, 24 M.J. 186 (C.M.A.1986).[7] Additionally, counsel's post-trial affidavits are silent as to any additional efforts defense counsel made either to renegotiate with the special court-martial convening authority, or to negotiate with the general court-martial convening authority, for a reduction in forum and reduction in charges due to the fact that the Government could not corroborate appellant's vague confession with regard to the use and distribution offenses. Trial defense counsel's pretrial actions raise

7. We must be concerned that expediency does not interfere with effectiveness. In somewhat of an analogous situation, however, this Court has determined that the defense strategy must be rational under the circumstances of the case and thus must be carefully rather than expediently thought out. Here, we question what appears to be a failure of trial defense counsel to

negotiate further the forum of appellant's court-martial; but, "[s]ince we are unable to figure out from the record whether, but for the [distribution offense], the case would have remained at a [general court-martial], we mention the point here solely as a matter of general principle." *United States v. Cordes*, No. 89–4332 (N.M. C.M.R. 26 September 1990).

questions about the adequacy of his pretrial preparation and negotiating skills.

As to his concern for the sentence his client might receive in light of the excessive sentences being adjudged in similar cases, trial defense counsel was concerned that appellant would be exposed to between ten and twenty years confinement "depending on the factual finding of 'with intent to distribute,'" an aggravating element of the possession offense. Yet, the appellant plead guilty by excepting "with intent to distribute." The logic of his concern would not be so illusive since his accepted plea was in conformance with the terms of the pretrial agreement, except for the fact that "the intent to distribute offense" had nothing to do with the impact of the unprovable and more serious distribution offense, the main reason for appellant's trial by general court-martial. Counsel's logic concerns us for two reasons: the distribution offense, not the possession with intent to distribute, was the offense that the special court-martial convening authority, and the trial counsel, believed required appellant's trial by general court-martial. If the Government could not prove the distribution, why offer to plead guilty to it at a general court-martial? If the Government was willing to accept a plea to simple possession for the same methamphetamine the appellant was alleged to have distributed, what was the rationale for trial defense counsel's accepting the Government's insistence that the appellant plead guilty to all of the remaining offenses, two of which the Government could not prove. The adamancy of the Government's demand that the appellant plead guilty to all charges and specifications in order to obtain the benefits of the pretrial agreement was questionable.[8] The practical effect of trial defense counsel's lack of aggressiveness in the use of his negotiating skills to advance the interests of his client did not challenge the adversarial process and subjected his client not only to conviction and sentence on unprovable offenses, but to a forum with jurisdiction to adjudge a maximum permissible punishment substantially more than that to which he might have been subjected had appellant been referred for trial by special court-martial. Even had trial defense counsel's negotiations failed to get the convening authority to reduce the forum and appellant's case remained at a general court-martial, the trial defense counsel's failure to attempt aggressively to negotiate a reduction in charges subjected appellant to a punishment substantially in excess of that which he would have faced without the use and distribution offenses. Drawing on our knowledge of sentencing throughout the Naval Service, we conclude, as confirmed by the military judge, that the sentence adjudged in appellant's case as a result of pleas of guilty to the offenses of simple possession and solicitation to distribute drugs to himself as a user, was substantially more severe because of his pleas of guilty to the additional offenses of use and distribution of methamphetamine. *See United States v. Ballard*, 20 M.J. 282 (C.M.A.1985).

Accordingly, upon evaluating counsel's performance in light of his perspective at the time and all the circumstances surrounding the reasons for the appellant's pleas of guilty to the use and distribution offenses, we find that defense counsel based his advice to his client on what he considered a tactical judgment, *i.e.,* concern for his client's receiving an excessive sentence.

We recognize that counsel's judgment does not always have to withstand the post-trial second thoughts of his client in order for an appellate court to uphold the clients's pleas as provident. *See McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); note 8, *infra*. We also recognize that one of our sister courts has stated that "appellate courts should not evaluate the competence of counsel by

---

8. JAGINST 5803.1 (Professional Conduct of Judge Advocates) Rule 3.8: A trial counsel shall:
 a. recommend to the convening authority that any charge or specification not warranted by the evidence be withdrawn;

 ....

 d. make timely disclosure to the defense of all evidence or information known to the lawyer that tends to negate the guilt of the accused....

considering in retrospect whether the advice of counsel was correct or incorrect." *United States v. Coronado,* 15 M.J. 750, 752 (A.F.C.M.R.1983) citing *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir.1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978); *Rickenbacker v. Warden,* 550 F.2d 62 (2d Cir.1978), and that mere mistakes and errors in judgment are insufficient to find ineffective assistance of counsel. *Coronado,* 15 M.J. at 750; *Rivas,* 3 M.J. 282. On the other hand, in cases where the courts have rejected an appellant's assertion of ineffectiveness, either the defense counsel had a plausible basis for making the judgment they did or the courts could evaluate the specific claim of ineffectiveness from the record and intelligently speculate whether the decisions made were logical tactical decisions. *See e.g., Brothers,* 30 M.J. 289; *Bono,* 26 M.J. 240; *United States v. DiCupe,* 21 M.J. 440 (C.M.A.1986), *cert. denied,* 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 52 (1986).

We find that trial defense counsel's tactical judgment in letting this concern for an excessive sentence govern his decision to advise appellant to waive the Article 32 investigation and to plead guilty to all charges and specifications lacked a plausible basis. *See United States v. Rivas,* 3 M.J. 282 (C.M.A.1977); *United States v. Mansfield,* 24 M.J. 611 (A.F.C.M.R.1987). Although trial defense counsel advised the appellant of the most crucial aspects regarding the law concerning the facts of his case, he did not exercise the customary skill and knowledge that normally prevails. *See Rivas,* 3 M.J. 282. He based his advice to plead guilty to offenses solely on his concern for the maximum sentences courts were adjudging in similar cases. But were those cases similar in that the sentences included convictions for drug offenses that were known to be unprovable? Such is unlikely.

Even were we to find them similar his judgment in that respect is plausible only if it were further based on having to choose among the best of unattractive options. *United States v. Coronado,* 15 M.J. 750 (A.F.C.M.R.1983). The record before us reveals, however, that we would further have to find that trial defense counsel had not yet obtained the best of unattractive options from which his client could choose. His negotiation with the Government had not included a confrontation over the unprovability of the use or distribution offenses. Counsel had not challenged the adversarial process in the interests of his client. Only when he had met that obligation and found the Government intransigent on the issue, could he have resorted to considering the practical considerations of which unattractive option, including pleas of guilty to unprovable charges, he should advise his client to take. Trial defense counsel's advice was not merely a tactical judgment, it was a judgment that failed to evaluate his client's case as a whole and reflected a competency that does not fall within the prevailing professional norms. *See United States v. Babbitt,* 26 M.J. 157 (C.M.A.1988); *Scott,* 24 M.J. 186. Accordingly, we find that appellant met the two-pronged test of *Strickland v. Washington.* As a result, appellant was not effectively represented by his trial defense counsel on Specifications 2 and 3 of Charge II and was prejudiced as to these findings and the sentence.

### C. Conflict of Interest

 In addressing the above issue, we analyzed a collateral issue *sua sponte:* did trial defense counsel's concern over his representation of the appellant raise a conflict of interest issue by which he denied appellant the effective assistance of counsel at the post-trial proceedings? We conclude that a conflict existed but it had no effect on the ultimate result of appellant's case. We believe the issue sufficiently serious, however, to warrant discussion of some basic law and its application to the facts we found in appellant's case.

 An accused is entitled to be represented by conflict-free counsel and is presumed not to waive that right. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Davis,* 3 M.J. 430 (C.M.A.1977); *United States v. Augusztin,* 30 M.J. 707 (N.M.C.M.R.1990). An accused is also entitled to the effective

assistance of counsel on appeal. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, *reh'g denied,* 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967); *United States v. Palenius,* 2 M.J. 86 (C.M.A.1977). The duties of a trial defense counsel do not end with the adjournment of the court-martial proceedings. *United States v. Titsworth,* 13 M.J. 147 (C.M.A.1982); *Palenius.* Appellate counsel can be found constitutionally deficient if they are confronted with a conflict of interest. *Entsminger v. Iowa,* 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); *Ellis v. United States,* 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958); *United States v. Augusztin,* 30 M.J. 707 (N.M.C.M.R.1990). Loyalty of defense counsel to his client after trial is a cornerstone of military justice and even an inadvertent action by counsel that runs contrary to that norm demands prompt corrective action. *United States v. Schreck,* 10 M.J. 226 (C.M.A.1981), *supplemented* 10 M.J. 374, *appeal after remand* 13 M.J. 856 (N.M.C.M.R.1982).

Of concern to us in the instant case is that immediately after appellant's court-martial adjourned, the military judge advised trial defense counsel that he may have rendered ineffective assistance of counsel to his client. After almost two months of reflection, trial defense counsel arrived at the same conclusion. He registered that concern with the convening authority in the petition for clemency he submitted pursuant to R.C.M.'s 1105 and 1106. In fact, that acknowledgment of ineffective assistance was the primary focus of counsel's plea to the convening authority to grant his client clemency. Once trial defense counsel arrived at that conclusion, his interests and his client's interests were in conflict.

Rule 1.7b of JAGINST 5803.1 (Professional Conduct of Judge Advocates) prohibits a judge advocate from representing a client if the representation of that client may be materially limited by the judge advocate's own interests, unless the judge advocate reasonably believes the representation will not be adversely affected; and, the client consents after consultation. Additionally, Rule 3.7a of the same instruction prohibits a judge advocate from acting as an advocate at a trial in which the judge advocate is likely to be a necessary witness except when the testimony relates to the nature and quality of legal services rendered in the case. *See* American Bar Association Model Rules of Professional Conduct, Rules 1.7(b) and 3.7(a) (1983). Professor Wolfram identified the problem this way:

> A different problem is created on appeal or in post-conviction proceedings if there is some arguable basis for a claim of a lawyer's ineffective assistance. Should the same lawyer who conducted the allegedly defective trial representation also argue his or her ineptitude to set the conviction aside?

> The problem is the lawyer's conflict of interest between making the most persuasive argument for overturning the conviction and protecting the lawyer's own reputation both generally and before the particular court in which the argument must be made. In addition, the court might regard the lawyer's attack as either condescending or, as above, contrived—in neither event giving it a hospitable hearing. (Citations omitted.)

*MODERN LEGAL ETHICS* at 811–812 (1986); Kentucky Bar Association Ethics Opinion No. 321 (July 1987); *see* Note, "Ineffective Counsel's Last Act—Appeal?: An Ethical Dilemma of Conflicting Interests," 1979 Ariz.St.L.J. 595 (1979). In appellant's case trial defense counsel had a conflict of interest with his client during the post-trial proceedings: his reputation was in jeopardy or his motives subject to challenge and he was a potential witness either for or against appellant's interests.

Once a defendant shows that his counsel actively represented conflicting interests, he has established the constitutional predicate for a claim of ineffective assistance of counsel and a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice to obtain relief. *Cuyler v. Sullivan,* 446 U.S. 335, 349–350, 100 S.Ct. 1708, 1721, 64 L.Ed.2d 333, 347

(1980); *Glasser*, 315 U.S. at 76, 62 S.Ct. at 471, 86 L.Ed. at 697 (1942). Trial defense counsel's third affidavit, contrary to the statements he previously made before this Court, states:

> 5. In retrospect, I believe the post-trial pontifications of the military judge were inappropriate and insincere. Having reviewed his sentences in similar cases both prior and after Kelly, I have found nothing to suggest the course of action chosen was ineffective.

This comment raised further questions about his understanding of the implications involved in asserting ineffective assistance of counsel at trial and thus the adequacy of his post-trial representation, at least until relieved of his *Palenius* duties by appellate defense counsel. The comment is dissimilar to other post-trial statements he has made and proves the validity of the law's concern for accused represented by counsel who are not conflict-free. The more the conflict issue is developed, the more the lawyer whose effectiveness is being challenged will have second thoughts about his/her representation. Human nature thus naturally comes to the fore and a quandary develops for the lawyer in determining whose interests, his or his client's, need protection.

Once counsel recognizes the potential issue of his ineffectiveness, he must identify that issue for his client and advise his client of the options available and the consequences thereof, including the conflict of interest problem that in turn requires him to either withdraw from the case or continue representation only with the client's voluntary, knowing and intelligent relinquishment of his right to conflict-free counsel. *United States v. Augusztin*, 30 M.J. 707 (N.M.C.M.R.1990), *citing Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). We find no evidence of record in this case that shows such consultation and waiver occurred.

After looking at the applicable lawyer conflict of interest law, and applying that law to the practical workings of the military appellate system and the facts of this case, we have concluded:

1. Trial defense counsel had a conflict of interest with his client at the post-trial proceedings when he concluded that he had provided ineffective assistance of counsel for his client;

2. Because the record fails to show whether trial defense counsel notified his client of his conclusion that he had rendered him ineffective assistance of counsel, we cannot presume that appellant waived his right to conflict-free counsel since an affirmative showing must be made that such a waiver was "a knowing and intelligent relinquishment or abandonment." *Id.* at 711;

3. Trial defense counsel, by identifying his ineffective assistance of counsel problem in the petition for clemency he submitted pursuant to R.C.M.'s 1105 and 1106, MCM, alleged legal error that the staff judge advocate did not address as required. *United States v. Hill*, 27 M.J. 293 (C.M.A. 1988);

4. Although the convening authority stated in his action that he considered the contents of the petition, an action taken without an analysis of the legal error by his staff judge advocate, we cannot presume that he understood the ramifications of the ineffective assistance of counsel issue, *see id.;*

5. Two different post-trial affidavits submitted by trial defense counsel in support of appellant's pleadings before this Court are similar to the statements he made in the clemency petition submitted to the convening authority after trial but a third post-trial affidavit submitted is dissimilar to the previous affidavits and statements.[9]

---

**9.** This illustrates the potential conflict a lawyer finds himself in if he tries to represent his client and justify his own conduct. In the heat of trial preparation, the trial itself and the emotions surrounding post-trial let-down, neither the lawyer nor his client can be objective about the case. Conflict-free counsel can stand back and objectively evaluate the case in its entirety. He also protects the client from inadequate representation. Finally, the conflict-free lawyer prevents the lawyer who is not conflict-free from being a witness for or against his recent client

Although we could not conclusively find that trial defense counsel's conflict actually affected the adequacy of his post-trial representation of appellant during post-trial proceedings, we did find that he adequately raised the issue of ineffective assistance for the appellant. Because of the submission of affidavits, we also determined that further proceedings in this matter would be fruitless, *see generally United States v. Dunbar*, 28 M.J. 972, 980 n. 5, 981 (N.M.C.M.R.1989), *aff'd*, 31 M.J. 70 (C.M.A.1990) (alternative means for providing facts to NMCMR that are necessary to support an appellate issue that were not developed in the record of trial). Finally, we concluded that we did not have to decide whether trial defense counsel's actual conflict of interest actually affected the adequacy of his representation of appellant at the post-trial proceedings. We arrived at this conclusion due to the uniqueness of the military appellate system. Article 70, UCMJ, 10 U.S.C. § 870, and R.C.M. 1202, MCM, provide the safety-valve for such errors. Although we could not be certain that trial defense counsel consulted with his client and advised him of his conflict of interest problem, appellate defense counsel, counsel different, separate and independent of trial defense counsel, developed a factual basis to raise the ineffective assistance of counsel issue before us for our review pursuant to Article 66(c), UCMJ. Appellant thus ultimately had conflict-free counsel to represent him on the issue on the appellate level. Accordingly, we found nothing in the record of trial, including the papers filed for these appellate proceedings, that leads us to conclude that trial defense counsel's conflict of interest actually affected the adequacy of his post-trial representation of appellant during appellate review. *See Johnston v. Mizell*, 912 F.2d 172 (7th Cir.1990); *United States v. Horton*, 845 F.2d 1414 (7th Cir. 1989). Trial defense counsel's post-trial actions provided sufficient post-trial representation to eliminate any question of the adequacy of post-trial conflict-free representation. Only because of Article 70, UCMJ, and the appellant's exercise of his right to post-trial representation at the ap-

pellate level, however, can we accede, in this case, to trial defense counsel's omissions and the lack of action by the staff judge advocate, as required by R.C.M. 1106(d)(4), MCM, 1984, in addressing the legal error identified by the trial defense counsel's R.C.M. 1105 submission. *See United States v. Hill*, 27 M.J. 293 (C.M.A. 1988).

### Conclusion

Having found that the trial defense counsel denied appellant the effective assistance of counsel on Specifications 2 and 3 of Charge II, we must now determine whether that ineffectiveness in any way affected the providency of the appellant's pleas to the remaining offenses, Charge I and its two specifications, Specification 1 of Charge II, and Charge III and its specification. We think it did not.

Accordingly, we set aside the findings of guilty to Specifications 2 and 3 of Charge II and dismiss them; we affirm the remaining findings. In determining the appropriateness of the sentence, we have considered the following facts: (1) that the military judge found the offenses of possession and solicitation to distribute methamphetamine multiplicious for sentencing purposes; (2) the two other offenses of which appellant was convicted were very minor offenses; (3) the appellant has served the confinement adjudged; (4) appellant's prior record, including four nonjudicial punishments; and (5) the lengthy time it has taken to review this case. Therefore, we find that the interests of the appellant and judicial economy dictate that we not order a rehearing on sentence; more significantly, we believe that, based upon our sense of sentencing throughout the Navy and Marine Corps in cases involving similar types of cases, we can adequately reassess the sentence. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990); *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). Accordingly, upon reassessment, we affirm only so much of the sentence as provides for a bad conduct discharge, confinement for 8 months, forfeitures of

and from having his motives on the stance he takes challenged.

$400.00 pay per month for 8 months, and reduction to pay-grade E–1.

Judge LANDEN and Judge STRICKLAND concur.