**UNITED STATES, Appellee,**

v.

**Eddie W. SANTISTEVAN, Jr., Corporal,
U.S. Marine Corps, Appellant.**

No. 54,959.

NMCM 84 2485.

U.S. Court of Military Appeals.

Sept. 28, 1987.

For Appellant; *Captain David C. Larson, JAGC, USN* (argued); *Commander J.A. Williams, JAGC, USN* (on brief).

For Appellee: *Lieutenant Commander David A. Sabot, JAGC, USN* (argued); *Captain Wendell A. Kjos, JAGC, USN* (on brief); *Captain Carl H. Horst, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, a general court-martial composed of officer members found appellant guilty of forcible sodomy, aggravated assault, kidnapping, and assault with intent to commit sodomy.[1] He was sentenced to be dishonorably discharged from

---

1. Appellant was charged with violating Articles 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925, 928, and 934, respectively. Because the case was tried prior to the effective date of the Manual for Courts-Martial, United States, 1984, the Manual for Courts-Martial, United States, 1969 (Revised edition), applied. The Charge of kidnapping was drawn under Article 134—the "General Article"—which provided:

> Though not specifically mentioned in this ... [Code], all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or

summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

Clearly, the offense of kidnapping is "prejudicial to good order and discipline or service discrediting." *See United States v. Bartole,* 21 M.J. 234, 235–36 (C.M.A.1986) (we affirmed where appellant was convicted of kidnapping; he and accomplice convinced victim to give them a ride from an off-base bar to Fort Belvoir, where they inveigled "her to drive to a secluded place," and where, "by forcibly taking her in and out of the car and/or by stealing her keys or threatening her with a knife," they raped her). *See also United States v. Craig,* 19 M.J. 166, 167 and n. 1 (C.M.A.1985) (we affirmed where appellant was convicted of attempted kidnapping and indecent assault; appellant seized victim from a street "by grabbing her, while displaying a knife, ...

the service, to be confined for 8 years, to forfeit all pay and allowances, and to be reduced to pay grade E-1. The convening authority approved these results. The Court of Military Review, however, found that the evidence was insufficient to support the charges of kidnapping and assault with the intent to commit sodomy but affirmed convictions for the lesser-included offenses of attempted kidnapping and assault with a means likely to inflict grievous bodily harm. The court reassessed the sentence and found it was appropriate as approved on review below. 22 M.J. 538 (1986).

Appellant has appealed to us to determine:

WHETHER THERE IS SUFFICIENT EVIDENCE OF RECORD TO SUPPORT THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW'S FINDING OF GUILTY TO ATTEMPTED KIDNAPPING.

"In evaluating the sufficiency of the evidence underlying a conviction ... [w]e may determine only whether the record contains sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. Reversal is proper only if *no* rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jones*, 808 F.2d 561, 569 (7th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987), *citing United States v. Allen,* 797 F.2d 1395, 1398 (7th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986).

"The elements of kidnapping are: a knowing and willful transport ... of an *unconsenting individual for any purpose. See* 18 U.S.C. § 1201.[2] Furthermore, *any* purpose, moral or immoral, satisfies the kidnapping statute." *United States v. Jones, supra* at 565–66. An attempt generally has been held to be an act that has gone beyond mere preparation and is consistent with the requisite intent and elements of the crime about to be committed.[3]

---

forcibly plac[ed] her onto ... seat of his car," told "her to remain there"; and when she tried to escape, he chased and grabbed her and forced her back into the vehicle). In *Craig,* we stated:

Although Title 18 of the United States Code contains general provisions regarding principals ... and conspiracy ... it has no all-inclusive provision for attempts. Instead, various attempts are specifically prohibited in some of the statutory sections defining substantive offenses—*see, e.g.,* 18 U.S.C. § 472 (attempt to pass counterfeit money); 18 U.S.C. § 1113 (attempt to commit murder); 18 U.S.C. § 1544 (attempt to use the passport of another); and 18 U.S.C. § 2387(a) (attempt to cause insubordination by servicemembers).

19 M.J. at 167.

* * * * * *

[W]hen a section of Title 18—... which proscribes kidnapping—is utilized as a basis for prosecution under the third clause of Article 134, the court-martial is trying a crime punishable under military law. The statutory definition of an offense that has been utilized in Title 18 is incorporated by reference in Article 134; and Article 80(a) [UCMJ, 10 U.S.C. § 80(a) ] is operative by its very terms regardless of the section in the United States Code where the definition of the offense is located.

This interpretation of the relationship between Articles 80 and 134 does not violate the canon of statutory construction ... because it merely gives effect to.clear meaning of the language of the Uniform Code.

19 M.J. at 169.

2. Title 18 U.S.C. § 1201, states that kidnapping occurs whenever any person

unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:

* * * * * *

(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States.

It further states that a kidnapper

shall be punished by imprisonment for any term of years or for life.

3. More specifically, an "attempt" is:

[A]n effort or endeavor to accomplish a crime, amounting to more than mere preparation or planning for it, which, if not prevented, would have resulted in the full consummation of the act attempted, but which, in fact, does not bring to pass the party's ultimate design. The requisite elements of an "attempt" to commit a crime are: (1) an intent to commit it, (2) an overt act toward its commission, (3) failure of consummation, and (4) the apparent possibility of commission.

Black's Law Dictionary 116 (5th ed. 1979).

Let's review the cycle of events that resulted in appellant's arrest and conviction. The record of trial reflects that on the date of the offense, the victim, Mrs. Ramirez, was residing with a friend in quarters aboard the Marine Corps Air Station, Helicopter, Tustin, California. On the evening of December 5, 1983, Mrs. Ramirez, who was originally from Morocco, went to a club "where ... [her] friend work[ed]" on the air station "just ... to talk ... for a while." There, she saw another friend who suggested that she "go to the Barn," a bar located off base, "have some drinks, and drive around a bit." Because she "just wanted to go someplace and relax," she followed her friend's advice, arriving at the Barn at about 10:30 p.m.

Once there, she "went to the bar" upstairs "and ... ordered a drink" which was paid for by "[a] young gentleman sitting at the bar," appellant. She found herself a seat and appellant followed, asked her to dance, and she declined. Later, he returned to ask her to dance a second time, and she accepted. He then seated himself next to her and they conversed about general things, *i.e.*, where she was from, etc. He bought her a few more drinks and, at closing time, asked her if she "wanted another." She declined, saying she had to go. He told her he would walk her to her car. On the way, they met Mrs. Ramirez' friends, who had come to join her. When they learned the bar had closed, they all agreed to go "to another place and have a drink." Once there, the group found a table, ordered drinks, talked, and danced. Mrs. Ramirez became tired and told her friends she was going to leave because she had "to work in the morning." Appellant said the same applied to him, and he, too, was going to leave. Because it would be on her way home, she offered to give him a ride to his barracks.

Once they were back on base, appellant directed Mrs. Ramirez to park her car near his barracks and attempted to persuade her to kiss him. When she declined, he produced a knife and viciously forced her—while poking the knife into her ribs—to perform fellatio, inducing regurgitation. At trial, she testified that appellant "kept grabbing" her "and ... said, 'I want you to get out of the car.'" She complied, and "[h]e was right behind ... [her] grabbing ... [her] back." He held onto her sweater, making her walk "to the front of the car." All this time, she could "feel the knife blade in ... [her] back stuck in ... [her] spine." He "pointed ... [her in a direction] straight ahead in front of the car, and ... said I want you to come with me down there," indicating an area down a little hill where there was a tree or trees. The victim said she "was so scared ... [and] was crying" so hard she could not clearly see what was at the bottom of the hill. She "didn't know what he was going to do, and there was nobody to see." Her "mind told" her she had "to do something" even if she was injured, so she "just turned real fast and ... ran." While she ran, she "was screaming, 'Please, somebody help me, please.'" Appellant caught her from behind and hit her on the head; she fell but kept screaming; he continued to beat her on her back and tell her to "[s]hut up." She "could feel" the "pain in ... [her] back and [the] beating all over ... [her] shoulders." Then she saw the lights of a vehicle coming towards them, and she "screamed harder," hoping to be heard. Appellant let go of her at this point, and she got up and ran.

She continued to run in the direction of the lights even though the vehicle did not stop. She continued in pursuit of help until finally she heard another car and stepped in front of it to force it to stop. The couple inside came to her aid, attempted to stop her bleeding and calm her down while they transported her to the emergency room at the hospital.

Appellate defense counsel contend that "[t]here is ... *no* evidence which suggests that the appellant would have held" the victim "beyond the period necessary to complete the sexual offense begun in the victim's automobile." We point out, however, that there is also "no evidence to suggest" the opposite. In short, what ap-

pellant actually would have done had he successfully moved the victim is conjectural and irrelevant. What is relevant, however, is whether appellant intended to knowingly and willfully "transport ... an unconsenting individual" from one location to another "for any purpose." *United States v. Jones, supra* at 565. We believe the evidence of record establishes that he did.

Appellant's counsel further contend "that kidnapping statutes ... do not apply to unlawful confinement or movements incidental to other felonies" and base their position on "the prevalent view" in some jurisdictions that actions "in which the movements of the victim are merely incidental to the commission of the" offense "do not substantially increase the risk of harm over and above that necessarily present in the crime ... itself." *People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, 238 (Cal.1969). Counsel do not dispute the fact that appellant intended to move Mrs. Ramirez out of her automobile, but they contend "the record is devoid of any evidence, direct or circumstantial, sufficient to establish beyond a reasonable doubt that the appellant intended to kidnap the victim" and that to reach its decision, the Court of Military Review "had to rely upon a suspected scenario of imagined events." The court below stated:

[H]ad the appellant been successful in removing Mrs. R to the more remote spot for the purpose of committing another act of sodomy, or something else, the offense of kidnapping would have been accomplished. [Citations omitted.] ... We are not convinced, however, that the appellant's actions in the circumstances of this case, went beyond attempted kidnapping. The seizure/carrying away was very brief and there was no holding beyond that incident to the virtually instantaneous asportation itself.

22 M.J. at 543–44.

The evidence contained in this record of trial clearly supports the conclusion that appellant formed an independent intent to impose an extended period of forcible detention upon the victim. His own actions— such as forcing her out of the car, seizing her by grabbing her sweater, beating her because she had run away and was screaming—demonstrate an intent to move her from one place to another against her will and constitute sufficient evidence to satisfy the *mens rea* requirement for attempted kidnapping and the element of attempting to carry away or seize. Moreover, when viewed in their entirety, appellant's actions support the finding of an attempt to kidnap which was neither "incidental" to nor an integral part of any other criminal act committed by him under the facts of this case. Accordingly, we agree with the position of the court below.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.