UNITED STATES

v.

**Raymond L. DICKEY, 518–80–6006, Boatswain's Mate Third Class (E–4), U.S. Navy.**

**NMCM 93 01448.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 29 April 1993.

Decided 4 Nov. 1994.

Joseph B. Gilbert, Esquire, Civilian Defense Counsel.

LT Philip Sundel, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

CDR S.A. Stallings, JAGC, USN, Appellate Government Counsel.

Before LARSON, WELCH and McLAUGHLIN, JJ.

McLAUGHLIN, Judge:

The appellant was tried on 29 April 1993 by a general court-martial composed of military judge alone. Pursuant to his pleas, he was convicted of conspiracy to commit rape, rape, sodomy, and kidnapping, in violation of Articles 81, 120, 125, and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 881, 920, 925, and 934. The adjudged sentence consisted of confinement for 10 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged. A pretrial agreement had no effect on the sentence.

The offenses arose from an evening birthday party out "on the town," involving five shipmates—the appellant, Newbold, Hayes, Moreno, and Holtzclaw—who, after much drinking, brought a prostitute to an apartment. Misunderstandings between the prostitute and the five men ensued, and the misconduct of the five Sailors quickly followed. All five Sailors pled guilty to charges arising from the events of 25 February 1993 at individual general courts-martial.

The appellant assigns five errors to his case.[1] For the reasons set forth below, we find these assigned errors to be without merit.

The factual events of this case, as explained by the appellant in the providence inquiry, began with one of his co-actors feeling unsatisfied with the sexual performance of the victim, a pre-paid prostitute. After hearing a co-actor arguing with the victim about getting money back, appellant went into the bedroom to mediate. He was unsuccessful in his efforts to calm the victim and she went downstairs to leave. The appellant and Newbold blocked the apartment's exit door. The appellant had a gun in his possession and pulled it from his waistband. The appellant admits to wanting to frighten the victim as he brandished the gun. When the victim called the bluff, the appellant unloaded the weapon and put it down. At that point, Newbold knocked the victim down onto the couch, kicked her, and the appellant went over to help. Record at 23–25. The victim was disrobed. The appellant took the victim's panties off while Hayes was trying to have sex with her. The appellant tried to have sex with her, and he did penetrate her. *Id.* at 26. The intent of the co-actors at the beginning of this detention was to "basically get the $20 back or get, I guess get something out of it, sir. Basically, ended up rape." Record at 27. The victim was stripped, taken from the floor over to a couch, a distance of about 6 or 7 feet, and attacked by her tormentors for an appreciable period of time. *Id.* at 28 and 35.

## INEFFECTIVE ASSISTANCE OF COUNSEL

 In claiming his or her defense counsel was ineffective in representation, an appellant bears the heavy burden of establishing both serious deficiency in performance and prejudice arising from that deficiency. *Strickland v. Washington,* 466 U.S.

1. I. APPELLANT RECEIVED INEFFECTIVE REPRESENTATION BY COUNSEL, WHO CONDUCTED NO INDEPENDENT INVESTIGATION, AND COERCED APPELLANT INTO PLEADING GUILTY ONLY FIFTEEN DAYS AFTER PREFERRAL OF THE CHARGES.
II. APPELLANT'S PLEA TO CONSPIRACY TO COMMIT RAPE WAS IMPROVIDENT, BECAUSE THERE WAS NO AGREEMENT BETWEEN APPELLANT AND HIS COMPANIONS TO COMMIT RAPE.

III. APPELLANT'S PLEA TO KIDNAPPING WAS IMPROVIDENT, BECAUSE THE AMOUNT OF DETENTION OR MOVEMENT NEEDED TO CONSTITUTE KIDNAPPING IS LACKING IN THIS CASE.
IV. APPELLANT'S COMMANDING OFFICER EXERTED IMPROPER COMMAND INFLUENCE IN THIS CASE.
V. APPELLANT'S SENTENCE IS INAPPROPRIATELY SEVERE.

668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Sanders,* 37 M.J. 116, 118 (C.M.A.), *cert. denied,* — U.S. —, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993); *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987). The errors made must be so serious that they deprive the accused of "a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The test for prejudice when a conviction is challenged on the basis of established ineffectiveness of counsel "is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *United States v. Dumas,* 36 M.J. 941, 942 (A.C.M.R.1993) (quoting *Strickland v. Washington,* 466 U.S. at 695, 104 S.Ct. at 2068–69). [2]

What are we to do when faced with this serious allegation from an accused against his trial defense counsel? That very question was asked and ably answered by the Coast Guard Court of Military Review in *United States v. Martin,* 39 M.J. 1124 (C.G.C.M.R.1994) (alleged ineffective assistance of counsel in failing to pursue leads, counsel's attitude, and counsel's insistence on accused pleading guilty to offenses he did not commit). Just as the Coast Guard Court did, we also find the necessary guidance in *United States v. Lonetree,* 35 M.J. 396 (C.M.A. 1992) [3], and seek "a colorable scenario consistent with relief-worthy ineffective assistance and a record consistent with the claim." *Id.* at 414.

The thrust of appellant's first assignment of error, alleging ineffective assistance of counsel, involves the "lightning quick rush to trial" without the defense having interviewed the victim. Appellant's Brief at 6; Appellant's Clemency Letter dated 1 June 1993.[4] We have admitted the trial defense counsel's affidavit of 13 June 1994, and he verifies that he did not interview the victim. Affidavit of Captain I dated 13 June 1994. On appeal, the appellant avers that this Court "may find that the hasty trial and failure to interview the prosecutrix alone are cause to reverse this case." Appellant's Brief at 7. Apparently, the victim could not be readily located by the prosecution or defense. Affidavit of Captain I dated 13 June 1994.

■■■ The appellant pled guilty. The factual sufficiency, amounting to a judicial confession, was established through the inquiry made by the military judge under *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969) and Rule for Courts–Martial [R.C.M.] 910, Manual for Courts–Martial, United States, 1984 [M.C.M.]. An unconditional guilty plea waives any objection relating to the factual issue of guilt. R.C.M. 910(j). Evidence from outside the record will not normally be considered on review to determine the providence of a guilty plea. *United States v. Rooks,* 29 M.J. 291 (C.M.A.1989); *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A.

---

**2.** The Army Court of Military Review in *Dumas* notes a possible twist on the *Strickland* analysis in the more recent case of *Lockhart v. Fretwell,* — U.S. —, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), which stated:

Under our decisions, a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' ... Thus, an analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence *solely because the outcome would be different but for counsel's error* may grant the defendant a *windfall* to which the law does not entitle him.

*Dumas,* 36 M.J. at 943 (quoting *Lockhart,* — U.S. at — – —, 113 S.Ct. at 842–43) (emphasis added). Compare this with the concurring language in *Kimmelman v. Morrison,* 477 U.S.

365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986): "A criminal defendant who obtains relief under *Strickland does not receive a windfall;* on the contrary, reversal of such a defendant's conviction is necessary to ensure a fair and just result." *Id.* at 393, 106 S.Ct. at 2592 (Powell, J., concurring) (emphasis added). See also Justice O'Connor's concurring opinion in *Lockhart,* indicating the "but for" test of *Strickland* survives. *Lockhart,* — U.S. at —, 113 S.Ct. at 845.

**3.** An issue in the *Lonetree* case was, paradoxically, ineffective assistance of counsel in Lonetree's civilian counsels' *failure* "to explore the possibilities of a pretrial agreement, negotiate with the Government over terms of such an agreement, and present a potential pretrial agreement to their client for his consideration." *Lonetree,* 35 M.J. at 412.

**4.** This letter was mailed by the appellant directly to the convening authority.

1980). After a full providence inquiry, under oath, the appellant stated on the record that he believed he was guilty and demonstrated that he was in fact guilty. The appellant's case is quite unlike the case of *United States v. Kelly,* 32 M.J. 813 (N.M.C.M.R.1991). In *Kelly,* the trial defense counsel twice admitted to being an ineffective defense counsel in advising Kelly to plead guilty for a pretrial agreement to charges for which there was no other evidence except the accused's uncorroborated confession. This Court found ineffective assistance of counsel with regard to the guilty pleas to charges that were thereby unprovable for lack of corroboration. *Id.* at 827; *see* Military Rule of Evidence 304(g). In *Kelly,* we said:

> As recognized in *Brady v. United States,* 397 U.S. 742, 756–757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747, 761 (1970), a defendant's appraisal of the Government's case against him and the likelihood of leniency should he plead guilty and have his plea accepted heavily influences his decision to plead guilty. He is not after that entitled to withdraw his plea merely because he subsequently discovers that his appraisal of the case against him was flawed or he miscalculated the penalties attached to his pleas. Also, where an appellant pleads guilty pursuant to the terms of a pretrial agreement on the advice of counsel, he can attack the voluntary and intelligent character of that plea only by showing that the advice he received from counsel was not within the standards set forth in *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). *See Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The standard the appellant must meet under *McMann* is to show that his counsel's advice was not within the wide range of competence demanded of attorneys in criminal cases. "A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, ... might be factually supported. *Tollett v. Henderson,* 411 U.S. at 268, 93 S.Ct. at 1609, 36 L.Ed.2d at 244. Finally, "[c]ounsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law." *Id.*

*Kelly,* 32 M.J. at 819.

In *McMann v. Richardson,* the Supreme Court observed, regarding the accused's decision whether to plead guilty, that: "In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case." 397 U.S. at 769, 90 S.Ct. at 1448. The Court continued: "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." 397 U.S. at 770, 90 S.Ct. at 1448.

■ We have considered the allegation of ineffective assistance of counsel, the affidavit of the trial defense counsel, and compared them to the record of trial. The trial defense counsel's affidavit reveals that he had possession of copies of all the confessions of the four conspirators, as well as statements of the victim and arresting officer. He was informed that the victim "skipped" town and couldn't be located. He was allowed to interview two of the co-accused, Fireman Moreno and Seaman Apprentice Holtzclaw, and they verified *and elaborated upon,* their confessions—greatly aggravating the appellant's role in the crimes. The appellant's trial defense counsel advised the appellant that the best strategy was to get to trial as quickly as practicable so that the Government would not "have been able to bring several very willing aggravation witnesses to increase the culpability of BM3 Dickey." Affidavit of Captain I dated 13 June 1994. The trial defense counsel considered that a speedy trial, before the victim could be located and testify in aggravation, would be in the appellant's best interest. It is reasonable not to introduce evidence because of the existence of harmful rebuttal. *United States v. Stephenson,* 33 M.J. 79 (C.M.A.1991) (ineffective

assistance of counsel on sentencing). As the U.S. Court of Military Appeals stated in *United States v. Bono*, 26 M.J. 240 (C.M.A. 1988), regarding application of the *Strickland* test in resolving claims of ineffective assistance of counsel at sentencing, "[i]n weighing such matters, we must give deference to counsel's tactical judgment and not substitute our view with the benefit of hindsight." *Id.* at 242. It's clear that the appellant and his trial defense counsel sought a pretrial agreement because of the strength of the Government's case bearing down on the appellant despite no personal interview with the victim. As the trial defense counsel's affidavit states, after noting the appellant's own confession:

Specifically, we discussed the need to be tried first before any of them could put BM3 Dickey in even a worse light. Of particular concern was the fact that Holzclaw [sic] said BM3 Dickey was the one with the broomstick, Moreno said BM3 Dickey pulled the slide back, placed the pistol within inches of her ear and told her "your not leaving yet, finish the job, otherwise I will kill you," and Hayes said BM3 Dickey pointed the gun at her head and had earlier said "then I'll just kill the bitch."

Affidavit of Captain I dated 13 June 1994. We find the trial defense counsel's response and the record more persuasive than the appellant's post-trial attack on his defense counsel.

Therefore, we find no colorable claim, consistent with the record, evidencing ineffective assistance of counsel in this case. In our opinion, the appellant was well served and no denial of his Sixth Amendment right to effective counsel under the United States Constitution exists. U.S. Const. amend. VI. Therefore, Assignment of Error I is without merit.

### PLEA TO CONSPIRACY TO RAPE

■ A conspiracy does not need to take a particular form or be manifested in any formal words, but rather, is generally established by the conduct of the parties themselves. *United States v. Barnes*, 38 M.J. 72 (C.M.A.1993); *United States v. Matias*, 25 M.J. 356, 362 (C.M.A.1987), *cert. denied*, 485

U.S. 968, 108 S.Ct. 1242, 99 L.Ed.2d 441 (1988); *United States v. Jackson*, 20 M.J. 68, 69 (C.M.A.1985). The agreement need not be expressed but need only be implied to sustain a finding of guilty. *Barnes*, 38 M.J. at 76; *United States v. Jacobs*, 451 F.2d 530, 535 (5th Cir.1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972). In determining the factual basis of the appellant's guilty plea, the military judge asked, *inter alia:*

MJ: And at that point, what did you specifically intend to do, *you and these other individuals?*

ACCUSED: We were going to rape her, sir.

MJ: Was that your intent?

ACCUSED: Yes, sir.

MJ: And did the agreement between yourself encompass each and every element of the offense of rape?

ACCUSED: Yes, sir.

. . . .

MJ: When did you make the conscious decision that you were going to rape her?

ACCUSED: By the way everybody acted, our conduct downstairs, we pretty much—everybody's temper boiled when she wouldn't give the money back.

Record at 27, 39 (emphasis added). There is no reason in logic or law to doubt that a conspiracy to rape existed. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). The detailed elements, tailored to the facts of the appellant's case, were read to the appellant, the legal terms were defined, and the military judge supplemented them with questions on the record about possible defenses, justification, or excuse. The appellant stated that he understood the detailed elements of the offense and had no questions about them. He further admitted that the elements accurately described what he did. This establishes the factual sufficiency of the plea. *United States v. Wimberly*, 20 U.S.C.M.A. 50, 42 C.M.R. 242 (1970); *United States·v. Sweet*, 38 M.J. 583 (N.M.C.M.R.) (en banc), *certificate for review filed*, 39 M.J. 66 (C.M.A.1993).

## KIDNAPPING

The appellant bases the assignment of error regarding the kidnapping offense on a lack of significant movement or detention of the victim. He claims any movement or holding was "incidental" to the commission of the underlying crimes of rape and sodomy. There is no averment that the detention was "momentary." In support of his position, he cites *United States v. Jeffress*, 28 M.J. 409 (C.M.A.1989), and *United States v. Santistevan*, 22 M.J. 538 (N.M.C.M.R.1986), *aff'd*, 25 M.J. 123 (C.M.A.1987). The Government cites the same cases to support its opposing position. *See also United States v. Barnes*, 38 M.J. 72 (C.M.A.1993); *United States v. Caruthers*, 37 M.J. 1006 (A.C.M.R.1993).

■ The initial motive to detain, to get the money, was not inherently criminal. If, however, the detention is more than merely momentary, a kidnapping has occurred if the other requisite elements are factually present. In this case, if a kidnapping had not already been committed at the door, then further analysis is required. The situation deteriorated into assaultive behavior and it appears to have become the crime of attempted robbery or robbery, and the incidental movement to the floor in the struggle would likely not constitute a separate kidnapping but occurred incidental to this attempted robbery.

As the briefs accurately reflect, in analyzing the elements of kidnapping under the first two clauses of Article 134, UCMJ,[5] the military courts have engrafted a requirement, for the purposes of the second element of kidnapping, that the *detention or asportation* be more than "incidental" *to another crime being committed on the victim by the perpetrator.* This is to avoid "injustice, oppression or an absurd consequence" and "to avoid the danger that persons who commit crimes such as robbery or rape, which inher-

ently involve some seizure or detention of the victim, could also face death or life imprisonment for kidnapping." *Santistevan*, 22 M.J. at 540, 541 (citations omitted). This does not negate the independent crime of kidnapping, which can be committed without other criminal activity when there is more than momentary detention or movement, and the requisite intent.

■ A six-factor framework to interpret the term "incidental," when the robber or rapist or sodomist is "in danger" of facing punishment for kidnapping, was established in *Santistevan* and has been adopted by the U.S. Court of Military Appeals in *Barnes* and *Jeffress*. The six factors are:

a. The occurrence of an unlawful seizure, confinement, inveigling, decoying, kidnapping, abduction or carrying away *and* a holding for a period. Both elements must be present.

b. The duration thereof. Is it appreciable or *de minimus?* This determination is relative and turns on the established facts.

c. Whether these actions occurred during the commission of a separate offense.

d. The character of the separate offense in terms of whether the detention/asportation is inherent in the commission of that kind of offense, at the place where the victim is first encountered, without regard to the particular plan devised by the criminal to commit it. . . .

e. Whether the asportation/detention exceeded that inherent in the separate offense and, in the circumstances, evinced a voluntary and distinct intention to move/detain the victim beyond that necessary to commit the separate offense at the place where the victim was first encountered. . . .

f. The existence of any significant additional risk to the victim beyond that inher-

---

5. The elements of kidnapping under the first two clauses of Art. 134, UCMJ, are:
 (1) That the accused seized, confined, inveigled, decoyed, or carried away a certain person;
 (2) That the accused then held such person against that person's will;
 (3) That the accused did so willfully and wrongfully; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
M.C.M., Part IV, ¶ 92(b).

ent in the commission of the separate offense at the place where the victim is first encountered. It is immaterial that the additional harm is not planned by the criminal or that it does not involve the commission of another offense.

*Barnes,* 38 M.J. at 74 (quoting *United States v. Santistevan,* 22 M.J. at 543).

■ We observe that the appellant apparently was a principal in detaining (confining) the victim for more than a moment, willfully and wrongfully, against her will, under service-discrediting circumstances to the prejudice of good order and discipline. His immediate motive was to keep her in the apartment until the five Sailors could resolve the $20.00/services dispute. It wasn't until the effort was underway to forcibly loose the $20.00 that the appellant and his co-conspirators formed the intent to commit rape. Therefore, at the time of the appellant's commission of the crime of kidnapping, there was no separate offense and the *Barnes, Santistevan, Jeffress* analyses would not apply.

[13; 14] But, if the initial detention was for a forcible taking of the $20.00, i.e., robbery, we also find that:

1. The detention and movements were not *de minimis,* but were, in fact, substantial, i.e., a detention of appreciable duration, movement from door to floor to couch, and multiple assaults, simultaneous and consecutive, on the victim by different persons.

2. The initial detention and movements were for the purpose of getting, or forcibly taking, $20.00 from the victim. The *mens rea* for the sex offenses, and the commission of the acts, was formulated *after* the detention for recovery of the money and, therefore, the detention was not incidental to the sex offenses, for significant detention had already been imposed for other intended purposes.

3. The significant additional risk to the victim of the initial detention to take back the $20.00 is obvious in the sordid events described above.

As this Court stated in *Santistevan:*

We think that, in law, the criminal takes his victim where the victim is located and should not be given license or reward by recognition of a right in the criminal to move or detain the victim so as to enhance the successful commission of the intended offense or to make escape more likely or *to do anything else.* In so moving or detaining the victim for such purposes, we think it is appropriate that the criminal run the risk of punishment under the applicable kidnap statute.

22 M.J. at 542–43 (emphasis added).

■ We further note that this is a guilty-plea case. We are fully cognizant that an accused's acknowledgement of guilt based on a subjective belief that his conduct was criminal is insufficient to support his plea of guilty. His responses must establish factual circumstances that objectively establish his guilt. *United States v. Schwabauer,* 37 M.J. 338 (C.M.A.1993); *United States v. Chambers,* 12 M.J. 443 (C.M.A.1982); *United States v. Davenport,* 9 M.J. 364 (C.M.A.1980); *United States v. Campos,* 37 M.J. 1110 (N.M.C.M.R.1993); *United States v. Evans,* 35 M.J. 754 (N.M.C.M.R.1992). The appellant agreed that the 6 or 7 feet the victim was moved was a substantial movement. Record at 34. The *Jeffress* case indicates that 15 feet can be "not incidental" and movement of a victim for only a few feet has established guilt in state cases. 28 M.J. at 414.

Remembering that this is a guilty-plea case, we borrow, quote, and paraphrase from the logic and decision in *United States v. Schoof,* 37 M.J. 96, 103 (C.M.A.1993) (recognizing the "twilight zone" distinguishing between preparation for an attempted crime and attempt itself in a guilty plea case), as it applies to the substantial nature of the movement in the appellant's case:

[W]here an accused pleads guilty and during the providence inquiry [establishes that the detention was not momentary, the detention was imposed before any intent to commit an additional criminal act was formed, and the movement was substantial] ... and points to a particular action that satisfies himself on [each] point, it is neither legally nor logically well-founded to say that actions that may be ambiguous on [each] point fall short of the line "as a matter of law" so as to be substantially

inconsistent with the guilty plea. Art. 45(a), UCMJ, 10 U.S.C. § 845(a).

▮ Applying the above principles of law to the facts of appellant's case, we conclude that the appellant has providently pled guilty to kidnapping as the length of the detention was not momentary or "merely incidental" to the commission of the subsequently occurring charged and uncharged crimes and, the asportation was not "merely incidental" to those crimes. *Barnes,* 38 M.J. at 75; *see also United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); Article 45, UCMJ, 10 U.S.C. § 845.

## UNLAWFUL COMMAND INFLUENCE

▮ The burden of raising the issue of unlawful command influence, and the weight of that burden, is best set forth in the case of *United States v. Allen,* 31 M.J. 572 (N.M.C.M.R.1990), *aff'd,* 33 M.J. 209 (C.M.A. 1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).

> "The accused bears the burden of raising the issue of unlawful command influence. He does so by establishing the existence of at least the appearance of unlawful command influence. Mere assertions or speculation without some supporting evidence are not sufficient to raise the issue.... [T]he defense [needs] some specific direct or circumstantial evidence—something other than coincidence—that some specific incident occurred that directly involved the appellant's own trial."

*Id.* at 590–91 (citations and footnote omitted). The accused's burden includes: "(1) 'asserting the facts of his allegation with sufficient particularity and substantiation so that if true, any reasonable person can only conclude that unlawful command influence existed'; (2) declaring that the proceedings were unfair; and (3) showing that the unlawful command influence was the proximate cause of that unfairness." *Id.* at 591 (quoting *Unit-*

*ed States v. Levite,* 25 M.J. 334, 341 (C.M.A. 1987)).

▮ We have reviewed the affidavit of the trial defense counsel and the appellant's clemency letter, and we have compared them to the record of trial. According to the 16 August 1993 affidavit of Seaman Apprentice [SA] S, the appellant's commanding officer made public statements to an all-hands gathering of the crew. In summary, these statements asserted, *inter alia,* that five "shipmates" had abused alcohol the night before; they picked up a prostitute and brought her to their apartment; she was restrained there at gunpoint and repeatedly raped, beaten, and assaulted with a broomstick; and, finally, she escaped and reported the incident to police. Additionally, the commanding officer referred to the five "shipmates" as "scumbags" and "lowlifes" who had no respect for women. Affidavit of SA S. The affidavit describes the commanding officer publicly reading a letter of apology from one of the five "shipmates" and addressing a group of women crew members to admonish them to be careful for themselves and to avoid people like the five "shipmates," who prey on young innocent victims. Most remarkably to the affiant, the commanding officer is alleged to have said that he didn't understand how some of the crew could welcome the rapists back into their arms. *Id.*

Clearly, the commanding officer was upset, disappointed, and concerned with the welfare and discipline of his crew. He was not thereby disqualified. *United States v. Nix,* 40 M.J. 6 (1994). However, the commanding officer was not the convening authority and did not detail the members to the court-martial.[6] No threats were made to any person that fulfillment of their legal obligations, if called to testify on behalf of the appellant, would engender retribution from higher authority, and the defense has not produced any evidence that witnesses favorable to the

---

6. On 22 April 1993 (14 days before referral of charges) the appellant offered and agreed to be tried by military judge alone in his bargaining to reach a pretrial agreement with the general court-martial convening authority [GCMCA]. Record at 49; Appellate Ex. I at 2. It is the GCMCA who convened the court, not the commanding officer, and there is no evidence that anyone who attended the all-hands gatherings was detailed as a member.

Significantly, although the appellant's commanding officer appointed an Article 32, UCMJ, 10 U.S.C. § 832, pretrial investigation to investigate the command-prepared charges, the record does *not* contain any recommendation from the commanding officer to the GCMCA regarding disposition of the charges. The record does contain the appellant's correspondence directly to the GCMCA to waive an Article 32, UCMJ, pretrial investigation.

appellant were improperly dissuaded from testifying on the appellant's behalf. *See United States v. Thomas,* 22 M.J. 388, 396 (C.M.A.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *United States v. Jameson,* 33 M.J. 669 (N.M.C.M.R. 1991); *United States v. Jones,* 30 M.J. 849 (N.M.C.M.R.1990). *See also United States v. Gleason,* 39 M.J. 776 (A.C.M.R.1994). In fact, a seasoned petty officer of 27 years service from the appellant's command did testify in presentencing for the appellant, and abundant documentary evidence was admitted manifesting the appellant's prior exemplary conduct as a civilian and as a Sailor, including an outstanding recent evaluation signed by the command's executive officer. Defense Ex. A–D.[7]

The appellant has failed to show that any actual unlawful command influence existed at all, much less that it denied the appellant a fair trial. He has also failed to show apparent unlawful command influence by asserting facts with sufficient particularity and *substantiation,* which, if true, would cause a reasonable person[8] to conclude that unlawful command influence existed. The appellant has, therefore, failed to meet his burden to establish actual or apparent unlawful command influence requiring resolution by this court or further inquiry under *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967); *see also United States v. Reynolds,* 40 M.J. 198 (C.M.A.1994). We conclude that there is no indication that the appellant failed to receive a fair trial due to unlawful command influence.

■■■ Strong argument has also been made that the appellant was prejudged by many and that the principle of "innocent until proven guilty" was violated. Appellant's Brief at 14 (quoting 16 August 1993 affidavit of SA S). This is not unexpected or unusual and does not inject error in this case. The role of the presumption of innocence is often confused by laypersons and courts. *Bell v.*

*Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). As the Supreme Court stated in *Bell v. Wolfish:*

> The presumption of innocence is a doctrine that allocates the burden of proof *in criminal trials;* it may also serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial.

*Id.* at 533, 99 S.Ct. at 1870 (citations omitted) (emphasis added). The presumption of innocence is a rule of evidence for the courtroom that defines a part of the accused's due process rights. It gives the parties, and the fact finder, a starting point in a criminal proceeding. It does not control the pretrial functioning of law enforcement officials, commanders, or magistrates, who are required to draw conclusions that individuals have committed crimes "more probably than not" in order to apprehend, detain, or authorize searches. R.C.M. 302(c), 305(d); Mil.R.Evid. 315. And, it certainly doesn't apply to the opinions of the general public or, in the appellant's case, shipmates. Assignment of Error IV is without merit.

### *SENTENCE APPROPRIATENESS*

Under the circumstances of this case, we find that the sentence, which includes 10 years confinement and a dishonorable discharge, is not inappropriately severe.

Accordingly, the findings of guilty and sentence, as approved on review below, are affirmed.

Chief Judge LARSON and Senior Judge WELCH concur.

---

7. While the commanding officer need not be bound by the presumption of innocence in his own personal assessment of the culpability of the accused Sailor, public dissemination of his opinions to subordinates, many of whom, under different facts, might have been called to testify on behalf of the appellant on the merits, was totally inappropriate.

8. For our purposes, a reasonable person is "a reasonable member of the public, [who], *if aware of all the facts,* would have a loss of confidence in the military justice system and believe it to be unfair." *Allen,* 31 M.J. at 590 (citations omitted) (emphasis added).